UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CA'LIEL JONES, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> VILLAGE OF HIGHLAND HILLS <br><br> Defendant. | Case No. 1:21-CV-00914 <br><br> JUDGE DONALD C. NUGENT <br><br> MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG <br><br> **JOINT MOTION FOR APPROVAL OF SETTLEMENT** |

The parties respectfully and jointly move the Court to approve the proposed Settlement reached by the parties and memorialized in the *Joint Stipulation of Settlement and Release* ("Settlement") attached as Exhibit 1. The Settlement seeks to resolve all individual and collective wage-and-hour claims that were or could have been brought in this Action.

If approved by the Court, the Settlement will provide settlement payments to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate, and satisfies the criteria for approval under § 216(b) of the FLSA.

The following settlement documents are respectfully submitted for approval or entry by the Court:

      Exhibit 1:    *Joint Stipulation of Settlement and Release*;

      Exhibit 2:    Proposed Final Order and Judgment Approving Settlement and Dismissing Action;

      Exhibit 3:    Exhibit A to *Joint Stipulation of Settlement and Release* – Individual Payments Allocation Schedule; and

      Exhibit 4:    Declaration of Plaintiffs' Counsel.

The below Memorandum in Support explains the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

Respectfully Submitted,

*s/ Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs*

*s/ John D. Latchney (via email consent)*
John D. Latchney (0046539)
**HANNA, CAMPBELL & POWELL, LLP**
3737 Embassy Parkway, Suite 100
Akron, Ohio 44333
DID: (330) 670-7602
Fax: (330) 670-7458
jlatchney@hcplaw.net

*Attorney for Defendant*

## MEMORANDUM IN SUPPORT

### I. THE LITIGATION

#### A. The Claims and Issues

Named Plaintiff Ca'liel Jones filed this Action in the United States District Court for the Northern District of Ohio, Eastern Division on May 3, 2021. (ECF #1, Compl.) Defendant Village of Highland Hills (the "Defendant" or "Village") is a Northeast Ohio municipality that employs firefighters/emergency medical services ("EMS") workers to respond to 911 calls within its borders. Defendant provides full fire/rescue emergency medical technician/paramedic emergency services 24 hours a day for residents, workers, and guests in Highland Hills. Plaintiff and Opt-Ins are current or former employees of Defendant employed as firefighter/EMS workers or employees with similar job titles and/or duties.

Plaintiff Ca'liel Jones was employed as a firefighter/EMS worker with the Village from approximately January 2016 to January 2021. (ECF #1, Compl. ¶ 10.) Plaintiff's Complaint alleged, among other things, that Defendant Village failed to pay him and other *similarly situated* employees overtime compensation allegedly required to be paid under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"). Specifically, Plaintiff alleged that Plaintiff and other firefighter/EMS workers with the Village fire department were not paid overtime at a rate of one and one-half times their regular rate as required by the FLSA. Rather, Plaintiff alleged that Defendant paid straight time rates instead of overtime ("time-and-a-half") compensation rates when these workers worked in excess of forty (40) in a workweek.

Previously, in the matter of *David Vance v. Village of Highland Hills*, N.D. Ohio Case No. 1:20-cv-00152, 6th Cir. Case No. 21-3066 ("*Vance*"), the United States Court of Appeals for

1

the Sixth Circuit addressed whether the Village established an applicable overtime exemption under 29 U.S.C. § 207(k) of the FLSA as to firefighter David Vance. While the FLSA requires employers to pay time-and-a-half overtime compensation for time that employees work over forty (40) hours in a workweek, the law provides an exemption for firefighters, in § 207(k), that provides that if certain conditions are satisfied, public employers can pay fire and related employees overtime only for hours worked over 216 hours in a 28-day work period. Ultimately, the Sixth Circuit determined that the Village did not meet the requisite conditions for the exemption to apply, and Highland Hills was therefore prohibited from exercising the exemption. As provided by the Sixth Circuit, "the Village 'did not establish a 28-day work period as the § 207(k) exemption required[,]' and '[t]here is no indication that the fire department ever actually followed the employee manual policy...' This conclusion is well-supported by the record, and it was not erroneous. We affirm." *Vance v. Vill. of Highland Hills,* No. 21-3066, 2021 U.S. App. LEXIS 32156, at *5 (6th Cir. Oct. 26, 2021) (Bush, J.) (citing *Vance v. Vill. Highland Hills*, No. 1:20-cv-00152, 2020 U.S. Dist. LEXIS 239386, at *6-7 (N.D. Ohio Dec. 21, 2020) (Gwin, J.)).

Consequently, from Plaintiff's perspective, the Village is required to pay its firefighter and related employees overtime at a rate of one and one-half times their hourly rate for all hours in excess of forty (40) hours. Nevertheless, obtaining the alleged unpaid wages at trial would be no easy task. In particular, Plaintiff would need to: (1) convince the Court that the FLSA claim should proceed to trial on a collective basis under 29 U.S.C. § 216(b); (2) prove that the Village was subject to the FLSA overtime payment requirements without exception/exemption as to firefighter employees other than Mr. Vance, for which the Sixth Circuit decision addressed; (3) establish the damage claims for Named Plaintiff and each of the Opt-In collective action

Plaintiffs; and (3) defeat Defendant's legal argument that any alleged violation was not willful and/or made in good faith.

### B. Conditional Class Certification

The parties filed their Joint Stipulation for Conditional Certification and Notice pursuant to 29 U.S.C. § 216(b) on January 25, 2022. (ECF #10.) The Court issued its Marginal Entry Order granting Conditional Certification on January 26, 2022. (ECF #12.) Notice was mailed and emailed to putative class members, and the opt-in period ended sixty (60) days after the date the Notice and Opt-In Consent Form were mailed. Those putative class members who opted in to Case No. 1:21-CV-00914 – Kadeem Evans (ECF #13-1); Tim Namy (ECF# 13-2); Andrew Leitch (ECF# 14-1); Vanessa Sherriff (ECF# 15-1); Chris Stanford (ECF# 15-2); Kareem Abouelhana (ECF# 16-1); John M. Kilbane (ECF# 17-1); Matthew Evans (ECF# 18-1); David Rorapaugh (ECF# 19-1); Ryan Zittkowski (ECF# 20-1); Christopher Allman (ECF# 21-1); Sarah Daubenmire (ECF# 21-2); Darvin J. Douglas (ECF# 21-3); Jestin Grossenbaugh (ECF# 21-4); Isabel Fehn (ECF# 22-1); Justin R. Eady (ECF# 23-1); Richard Fiktus (ECF# 24-1); and Thomas J. Cerveny (ECF# 26-1) – were joined as party Opt-In Plaintiffs.

### C. Discovery and Document Analysis

The parties engaged in discovery, and Defendant ultimately produced voluminous data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiff and Opt-Ins. Included in their Joint Stipulation for Conditional Certification and Notice, Defendant agreed to provide Microsoft Excel-compatible payroll data including for Plaintiff Ca'liel Jones and each opt-in plaintiff. Defendant ultimately produced payroll data and documents as spreadsheets. Defendant provided thousands of records and data points for the Named and Opt-In Plaintiffs. The documents and data were extensively analyzed by both sides to assess the

3

strengths and weaknesses of the case and determine computations of the claimed damages. The discovery and analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

## II. THE NEGOTIATIONS

As noted above, prior to engaging in settlement negotiations, Plaintiffs' Counsel conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Following Plaintiffs' Counsel's analysis of the data and documents necessary to fully and fairly evaluate the claims of the Named Plaintiff and Opt-Ins, the parties engaged in a mediation before Honorable Magistrate Judge Jennifer Dowdell Armstrong on October 28, 2022. This mediation ultimately resulted in a global settlement encompassing all issues, subject to approval by the Court pursuant to § 216(b). The distributions and settlement as a whole, including the attorneys' fees to Plaintiffs' Counsel, are supported by the Declaration of Plaintiffs' Counsel. (*See* Ex. 4.) Formal settlement documents, including the *Joint Stipulation of Settlement and Release* attached as Exhibit 1, were later prepared and executed for approval by the Court.

## III. THE SETTLEMENT TERMS

If approved by the Court, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-Ins representing a substantial percentage of the potential value of their claims. The proposed payments to Named Plaintiff and Opt-Ins – set forth in the Individual Payments Allocation Schedule (Ex. 3) – are based on an individual assessment of the actual amounts of unpaid overtime during the applicable time period. The settlement achieves an excellent result for the covered workers, and results in an average payout

of $6,622.81 per worker after the deduction of attorney fees, costs, and the service award as outlined below.

**Total Settlement Amount.** Defendant has agreed to pay the total settlement amount of $200,000.00 as set forth in the Settlement Agreement. (Ex. 1 at ¶ 13.) That sum will be used to make settlement payments to Named Plaintiff and Opt-In Plaintiffs which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by the Named Plaintiff and Opt-In Plaintiffs; (2) attorneys' fees and reimbursed litigation expenses; (3) service award to Plaintiff Ca'liel Jones; and (4) any other obligations of Defendant under the Settlement Agreement.

**Payments to Plaintiffs.** From the total settlement amount, the total amount of $125,833.40 will be paid to the Plaintiffs in consideration for release of claims as provided in the Settlement Agreement. If approved by the Court, as above, the proposed Settlement will make individual settlement payments available to the Named Plaintiff and Opt-In Plaintiffs representing a substantial percentage of the potential value of their claims, and achieves an excellent result for the covered individuals.

**Service Award.** In addition, the Named Plaintiff Ca'liel Jones will receive a service award of $7,500.00 in recognition of his service to Plaintiffs' Counsel and his contribution to achieving this Settlement. The proposed service award was well-earned. Among other things, Plaintiff Ca'liel Jones consulted with Plaintiffs' Counsel at critical stages; attended the mediation; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of himself and members of the FLSA collective; and provided other important documents and information throughout the course of the litigation. His contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Plaintiff

Ca'liel Jones's efforts have resulted in a significant recovery for the other Opt-Ins to this litigation.

**Attorneys' Fees and Cost Reimbursements.** From the Total Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees and costs in the total amount of $66,666.60. After reductions for costs and litigation expenses in the total amount of $821.76, the attorney fee recovery will equal $65,844.84. (Ex. 1 at ¶ 14; *see, e.g.,* Ex. 4, Decl. of R. Winters at ¶ 30.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel. (*See generally id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Named Plaintiff and Opt-In Plaintiffs. (*See* Ex. 1, Settlement Agreement at ¶¶ 13, 14, 16.) As further explained in Section IV, D of this brief below, the payment to counsel is reasonable, and fulfills the purpose and intent of the FLSA's fees provisions. (*See* Ex. 4 at ¶¶ 30, 34-42.)

### IV. THE PROPRIETY OF APPROVAL

Pursuant to the FLSA, claims for back wages and other damages may be settled or compromised only with the approval of the district court or the Secretary of Labor. *See, e.g., Lewis v. Huntington Natl. Bank,* 789 F.Supp.2d 863, 869 (S.D.Ohio 2011) (citing *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-1353 (11th Cir. 1982)). To approve the settlement, the Court should determine that the compromise is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Yorba v. Barrington School, LLC*, S.D.Ohio No. 2:21-cv-691, 2022 U.S. Dist. LEXIS 118230, at *7 (July 5, 2022) (citing *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at

6

*1 n.1 (S.D. Ohio June 16, 2008), quoting *Lynn's Food*, 679 F.2d at 1353-55 (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute"), citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8, 90 L. Ed. 1114 (1946)).

This Settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b). The court presiding over an FLSA action may approve a proposed settlement of the action under § 216(b) "after scrutinizing the settlement for fairness." *Landsberg,* 2008 U.S. Dist. LEXIS 51544, at *2-3, fn. 1 (quoting *Lynn's Food*, 679 at 1353-55 (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute")); *Hill v. Medicare Transport, Inc.*, N.D.Ohio No. 5:19CV1582, 2019 U.S. Dist. LEXIS 182622, at *2 (Oct. 22, 2019); *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC,* S.D.Ohio No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (May 30, 2012)); *Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio May 4, 2018).

### A. The Seven-Factor Standard is Satisfied

In *Hill*, 2019 U.S. Dist. LEXIS 182622, at *2, a court within this district used seven factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. § 216(b):

> (1) [T]he existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.

(Citing *Snook v. Valley OB-GYN Clinic, P.C.,* E.D.Mich. No. 14-cv-12302, 2014 U.S. Dist. LEXIS 177517, at *3 (Dec. 29, 2014), citing *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241

7

(M.D. Fla. 2010)). *See also Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) ("the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement") (citing *Crawford v. Lexington-Fayette Urban Cty. Govt*., E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, 2008 WL 4724499, at *3 (Oct. 23, 2008) (further citation omitted)). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017) (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, 2011 WL 2532922, at * 3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *14 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008), citing *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-1206 (6th Cir.1992)).

    A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability, which Defendant vehemently denies, but also each employee's overtime damages. Wage-and-hour cases for groups of employees - even small groups – are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The parties engaged in substantial document review, comprehensive payroll and wage and hour records analysis, and due diligence prior to contentious negotiations, and the issues were well understood – as noted above, the parties conducted a comprehensive investigation, including an extensive analysis of

8

the wage-and-hour information and data and documents. Plaintiffs' Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The settlement was reached as a result of arms-length negotiation between parties represented by competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *4-5. Here, this settlement yields a recovery of approximately 115% of the unpaid wage damages as calculated by Plaintiffs' Counsel – while the settlement results in a combined settlement value of $125,833.40 to Plaintiffs (after the deduction of attorneys' fees, costs, and service award), based on Plaintiffs' Counsel's calculations in preparation for mediation, the total recoverable unpaid overtime damages were $108,969.94. Inherent in the proposed distribution method in which Plaintiffs are distributed settlement payments based proportionally on each Plaintiff's calculated damages during the relevant period, the settlement proposal treats Plaintiffs equitably relative to one another.

   **B.  The Settlement Payments Are Fair, Reasonable, and Adequate**

As a part of the scrutiny applied to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

In the present case, the parties engaged in substantial document review, comprehensive data analysis, and due diligence prior to contentious negotiations, and the issues were well understood – as noted above, the parties conducted a comprehensive investigation, including an extensive analysis of the wage-and-hour information and data and documents. Each of the covered individuals will receive approximately 115% of the unpaid overtime wage damages as calculated by Plaintiffs' Counsel. Moreover, the method of allocating the settlement proceeds in a wage-and-hour case is eminently equitable and fair, as it is based exclusively on the actual amounts of the Plaintiffs' damages.

9

### C. The Service Award to the Plaintiff is Proper and Reasonable

A reasonable service award properly recognizes the representative Plaintiff's services on behalf of other beneficiaries of the settlement and their contribution to achieving a positive outcome. *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990). Courts have noted that such awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Yorba*, 2022 U.S. Dist. LEXIS 118230, at *14 (citing *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019), quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).

In this Circuit, reasonable service awards are

> [J]ustified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case, or where the named plaintiffs faced the risk of retaliation or threats as a result of their participation as class representatives.

*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273 (S.D. Ohio 1997) (citations omitted). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010) (approving $6,000 and $4,000 to representative Plaintiffs) (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000)); *see also Osman*, 2018 U.S. Dist. LEXIS 78222, at *5-6 (approving $7,500 service award to named plaintiff); *Benton v. Dhl Express United States*, No. 2:20-cv-2595-SHL-atc, 2021 U.S. Dist. LEXIS 252347, at *2-3 (W.D. Tenn. Mar. 16, 2021) (approving $7,500

10

service award); *Alward v. Marriott Int'l, Inc.,* No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053, at *3-4 (N.D. Ohio Nov. 18, 2019) (approving $7,500 service award).

Indeed, the Named Plaintiff Ca'liel Jones here incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," and "spent a good deal of time and effort in this case." *In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiff Ca'liel Jones consulted with Plaintiffs' Counsel at critical stages; helped counsel review and respond to the documents provided by Defendant and prepare a demand on behalf of himself and members of the FLSA collective; attended the mediation; and provided and reviewed other important documents and information throughout the course of the litigation. His contributions were instrumental in enabling Plaintiffs' Counsel to negotiate the proposed Settlement. Furthermore, Plaintiff Ca'liel Jones patiently, proactively, and faithfully represented the interests of all Opt-Ins and ably assisted Plaintiffs' Counsel. His contributions were instrumental in achieving this Settlement on behalf of all concerned. The proposed service award of $7,500.00 is reasonable and well-earned. Defendant has no objection to this award.

### D. Plaintiffs' Counsel's Fees and Expenses are Proper and Reasonable

The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502-03 (6th Cir.1984)).

11

The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages." *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6, 1985 WL 13108, at * 2 (6th Cir.1985)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *27 (May 30, 2012) (the fee award must be "adequate to attract competent counsel but … not produce a windfall") (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). The Sixth Circuit has "upheld substantial awards of attorney's fees even though a plaintiff recovered only nominal damages" *Fegley,* 19 F.3d at 1134 (quoting *Posner v. Showroom, Inc.*, 762 F.2d 1010, 1985 U.S. App. LEXIS 14544, at *6 (6th Cir.1985)). *Accord*, *Hill*, 2019 U.S. Dist. LEXIS 182622, at *3. "[I]n determining what constitutes a 'reasonable' fee award, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees . . . encourage[s] the vindication of congressionally identified policies and rights." *Funk v. Airstream, Inc.*, S.D.Ohio No. 3:17-cv-260, 2019 U.S. Dist. LEXIS 162334, at *5 (Sep. 23, 2019) (citing *Fegley*, 19 F.3d at 1134-35 (internal quotations and citations omitted)).

Here, Plaintiffs' Counsel seeks approval under the percentage-of-the-fund method, which has been approved by the Sixth Circuit. *See Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6 (citing *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09-CV-1608, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees).

12

As noted in *Osman*, one-third of the common fund "is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'" *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *8, citing *Dillworth v. Case Farms Processing, Inc*., No. 5:08CV1694, 2009 U.S. Dist. LEXIS 76947 (N.D. Ohio Aug. 27, 2009); *Jackson v. Papa John's*, Case No. 1:08-CV-2791, 2009 U.S. Dist. LEXIS 140578 (N.D. Ohio 2009); *Fincham v. Nestle Prepared Foods Co*., 1:08-CV-73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus*., Case No. 1:07-CV-1110 (N.D. Ohio 2007)). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encourages early settlement before substantial fees and expenses have accumulated. *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *18-19.

"The lodestar figure is used to confirm the reasonableness of the percentage-of-the-fund award." *Osman,* 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Bowling v. Pfizer, Inc*., 102 F.3d 777, 780 (6th Cir. 1996)). A percentage-of-the-fund attorneys' fee award is reasonable when it amounts to a multiplier of approximately 2.5. *See, e.g., Castillo v. Morales, Inc.,* No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936, at *22 (S.D. Ohio Dec. 22, 2015) ("Class Counsel's cumulative lodestar of $263,479.00, compared to its requested fee of $660,000.00, yields a lodestar multiplier of approximately 2.5. This is typical of lodestar multipliers in similar cases."); *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *18 (July 11, 2014) ("Counsel's cumulative lodestar of $512,885, compared to its requested fee of $1,320,000, yields a lodestar multiplier of 2.57, which is consistent with other risk multipliers...") (citations omitted); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *7 (citing *Thorn v. Bob Evans Farms, Inc*., No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL

13

8140448, at *3 (S.D. Ohio Feb. 26, 2016) ("approving 32.92 percent of the common fund when that number amounted to a 2.01 multiplier of plaintiff's counsel's loadstar attorney's fees").

Currently (as of November 3, 2022), Plaintiffs' Counsel collectively have approximately 131.9 attorney hours in this case, a fee lodestar of $54,729.00. The breakdown is as follows: Joseph F. Scott has approximately 22.5 hours at $500 per hour; Ryan A. Winters has approximately 34 hours at $425 per hour; and Kevin M. McDermott II has approximately 75.4 hours at $385 per hour. (*See* Ex. 4, Decl. of R. Winters at ¶ 40). Plaintiffs' Counsel's multiplier is 1.20, significantly less than that of other similar above-referenced wage and hour cases which were approved by the district court. The lodestar calculation in this matter unequivocally supports the reasonableness of the fee request.

Importantly, Plaintiffs' Counsel's lodestar has not been adjusted to account for the time Plaintiffs' Counsel will expend going forward to this matter's conclusion, including for the time Plaintiffs' Counsel spent after November 3, 2022 finalizing this motion for approval and other settlement papers, as well as additional time counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the administration of the Settlement, responding to questions and inquiries from the collective action members, and continuing representation of Plaintiffs through the conclusion of this matter and disbursement of settlement proceeds. Collective action participants routinely contact counsel for questions regarding the effect of settlement, the formulae or calculations for their individual awards, and the anticipated timeline for receiving payment. Plaintiffs' Counsel has extensive experience in these matters, and based upon prior settlements of similar size, counsel anticipates expending an additional approximately 10 hours in finalization of this matter and settlement administration. (*See,* Ex. 4, Decl. of R. Winters at ¶ 41.) Plaintiffs' Counsel therefore expects that the total attorney hours expended at the conclusion

of this matter will be approximately 141.9 hours, a blended lodestar amount (based upon Scott & Winters Law Firm, LLC's blended rate of $436.67) of approximately $59,095.67, or a lodestar multiplier of 1.11. (*Id.*)

In addition, the Settlement provides for $821.76 in reimbursable out-of-pocket expenses incurred in this case by Plaintiffs' Counsel. These costs and expenses consist of the case filing fee, service of the complaint, and third printing, mailing, and associated costs pertaining to distribution of the collective action notice after conditional class certification. These expenses constitute costs that were reasonably necessary to prosecute the action. (*See* Ex. 4 ¶ 42.)

Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions.

## V. CONCLUSION

For the reasons addressed above, the parties respectfully request that the Court approve the Settlement by entering the proposed order attached as Exhibit 2.

Respectfully Submitted,

| | |
|---|---|
| *s/ Ryan A. Winters* | *s/ John D. Latchney (via email consent)* |
| Joseph F. Scott (0029780) | John D. Latchney (0046539) |
| Ryan A. Winters (0086917) | **HANNA, CAMPBELL & POWELL, LLP** |
| **SCOTT & WINTERS LAW FIRM, LLC** | 3737 Embassy Parkway, Suite 100 |
| P: (216) 912-2221  F: (440) 846-1625 | Akron, Ohio 44333 |
| 50 Public Square, Suite 1900 | DID: (330) 670-7602 |
| Cleveland, OH 44113 | Fax: (330) 670-7458 |
| jscott@ohiowagelawyers.com | jlatchney@hcplaw.net |
| rwinters@ohiowagelawyers.com | |
| | *Attorney for Defendant* |
| Kevin M. McDermott II (0090455) | |
| **SCOTT & WINTERS LAW FIRM, LLC** | |
| P: (216) 912-2221  F: (440) 846-1625 | |
| 11925 Pearl Rd., Suite 310 | |
| Strongsville, Ohio 44136 | |
| kmcdermott@ohiowagelawyers.com | |

15

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*s/ Ryan A. Winters*
Ryan A. Winters (0086917)
